1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Arthur Larry Lucero,                )
                                    )
                   Petitioner,      )
                                    )
          v.                        )     CIV 05-2207 PHX EHC (VAM)
                                    )
Warden Meg Savage, et al.,          )     REPORT AND RECOMMENDATION
                                    )
                   Respondents.     )
_____)

TO THE HONORABLE EARL H. CARROLL, U.S. DISTRICT JUDGE.

    Arthur Larry Lucero ("petitioner") filed a pro se Petition
for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.
Petitioner raises two grounds for relief in the petition.  (Doc. 1
at pp. 5-6).  Respondents filed an answer opposing the granting of
habeas relief.  (Doc. 4).

### BACKGROUND

    On February 11, 2002, petitioner waived his right to a jury
and was convicted in Maricopa County Superior Court of the first
degree murder of Chandler Police Officer James Snedigar.  (Doc. 4,
Exhibit D at pp. 1-2).  Petitioner's conviction was based on both
felony murder and premeditated murder.  (Doc. 4, Exhibit M).
Petitioner was also convicted of the first degree murder (felony
murder) of Sergio Hernandez Martinez, armed robbery and first
degree burglary.  (Doc. 4, Exhibit D at pp. 1-2).  The court
sentenced petitioner to 5 years in prison for the burglary
conviction and 15 years in prison for the armed robbery

1 conviction, to be served consecutively to the 5-year sentence for

2 burglary.  Petitioner was also sentenced to life in prison (with

3 no possibility of parole until 25 calendar years have been

4 completed) for the two first degree murder convictions, to be

5 served consecutive to the sentences for the burglary and armed

6 robbery convictions.  (Id. at Exhibit E).

7       Petitioner appealed his conviction to the Arizona Court of

8 Appeals.  Petitioner raised one claim, to wit: the trial court

9 erred in denying his Rule 20 motions for judgments of acquittal on

10 the murder charges.  (Doc. 4, Exhibit F at pp. 8-11).

11       On February 11, 2003, the Arizona Court of Appeals issued a

12 decision reversing petitioner's conviction based on "premeditated

13 murder" concerning victim James Snedigar but affirming the murder

14 convictions on a felony murder theory.  (Doc. 4, Exhibit G at pp.

15 1, 5-12).  On May 30, 2003, the Arizona Supreme Court issued an

16 order denying review without comment.  (Id. at Exhibit I).

17       On June 25, 2003, petitioner filed a NOTICE OF POST-

18 CONVICTION RELIEF pursuant to Ariz.R.Crim.P. 32.1.  (Doc. 4 at

19 Exhibit J).  Eventually, petitioner filed a pro se petition for

20 post-conviction relief raising a single claim of ineffective

21 assistance of counsel based on his trial attorney's advice "TO

22 WAIVE MY RIGHTS TO A JURY TRIAL AND HAVE A BENCH TRIAL TO AVOID

23 THE DEATH PENALTY FROM CHARGES OF FELONY MURDER."  (Doc. 4,

24 Exhibit L at p. 3 (Attachment)).  In support, petitioner stated:

25       I WAS NOT AWARE AT THE TIME THAT UNDER THE FELONY MURDER
        ACCOMPLICE LAW, A DEFENDANT CANNOT BE GIVEN THE DEATH
26      PENALTY. IM SURE YOUR HONOR IS AWARE THERE IS CASE LAW
        TO SUPPORT THIS FACT. THEREFORE MY ATTORNEY ALEX
27      GONZALEZ MISREPRESENTED THE FACTS AND MISLEAD ME INTO

28                                    2

1
WAIVING MY RIGHTS TO A JURY TRIAL TO AVOID THE DEATH
PENALTY THAT I WAS NEVER REALLY IN ANY THREAT OF.
2
COUNSEL SHOULD HAVE BEEN FULLY AWARE THAT I WAS NOT
UNDER THREAT OF THE DEATH PENALTY, AND IF HE WAS AWARE
3
THEN HE CLEARLY "LIED."  EITHER WAY HE WAS INEFFECTIVE
ASSISTANCE. I TRULY BELIEVE COUNSELS REASON FOR ADVISING
4
ME TO WAIVE MY RIGHT TO A JURY TRIAL WAS TO MAKE HIS JOB
EASIER IN AVOIDING A TRIAL BY JURY, SO HE MISLED ME AND
5
MISREPRESENTED HIS DEFENDANT ...  I AM ASKING THE COURT
TO DISMISS DEFENDANTS WAIVER TO A JURY TRIAL AND ALLOW
6
DEFENDANT A NEW TRIAL AND PROPER COUNSEL.

7
(Id.).  On August 19, 2004, the trial court issued a minute entry

8
denying the Rule 32 petition.  (Doc. 4 at Exhibit M).  Petitioner

9
did not seek appellate review.  (Doc. 1 at pp. 3, 6).

10
On July 26, 2005, petitioner filed a federal habeas corpus

11
petition raising the following grounds:

12
**GROUND I**: Amendment IV

13
ME (LUCERO) AND MY CO-DEFENDANTS WERE CONVICTED OF (1)
FELONY MURDER FIRST DEGREE MURDER OF OFFICER JAMES
14
SNEDIGAR (2) FELONY FIRST DEGREE MURDER OF SERGIO
MARTINEZ (3) ARMED ROBBERY AND (4) FIRST DEGREE
15
BURGLARY.  ON APRIL 16th 1999 AT APPROXIMATELY A QUARTER
TO NOON, CRESCENT JEWELERS IN TEMPE, AZ. WAS ROBBED.  I
16
(LUCERO) WAS LATER IDENTIFIED AS ONE OF THE ROBBERS.
THE POLICE CHASED A BLACK MUSTANG BELIEVED TO HAVE BEEN
17
INVOLVED UNTIL IT TURNED OFF INTO AN APARTMENT COMPLEX
IN CHANDLER, AZ.  THE PURSUING OFFICER "LOST SIGHT" OF
18
THE SUSPECT VEHICLE AND SHORTLY AFTER FOUND THE MUSTANG
ABANDONED IN THE PARKING LOT, AT APPROXIMATELY 11:57 AM
19
ON THAT DATE, JEWELRY FROM THE ROBBERY WAS FOUND IN THE
VEHICLE, S.W.A.T. TEAMS FROM TEMPE AND CHANDLER THEN
20
CONVERGED ON THE COMPLEX LOOKING FOR SUSPECTS AND
"SEVERAL HOURS" PASSED DURING WHICH THEY CONDUCTED A
21
DOOR TO DOOR SEARCH.  OFFICERS FOUND A BROKEN WINDOW AT
APARTMENT 1055 AT 2:45 PM. AT 3:00 PM THEY ENTERED AND A
22
GUN BATTLE TOOK PLACE WHERE OFFICER JAMES SNEDIGAR WAS
KILLED AND SERGIO MARTINEZ "NO ONE" ELSE WAS IN THE
23
APARTMENT.  APPROXIMATELY AN HOUR AFTER THE SHOOTING,
OFFICERS ARRESTED ME AND CO-DEFENDANT STANDING OUTSIDE
24
OF APT. 1086 IN THE SAME COMPLEX, 528 FEET FROM
APARTMENT 1055 WHERE THE SHOOTINGS OCCURED [sic].
25
MYSELF AND CO-DEFENDANT WERE ARRESTED AND CONVICTED OF 2
COUNTS OF FELONY MURDER OF OFFICER JAMES SNEDIGAR AND
26
SERGIO MARTINEZ.  I FEEL I NEVER SHOULD HAVE BEEN
CHARGED WITH EITHER COUNTS OF FELONY MURDER.  IN THIS
27
INSTANCE THE ROBBER AND HIGH SPEED CHASE WERE COMPLETED

28
3

1  AT 11:57 AM WHEN THE OFFICER FOUND THE ABANDONED MUSTANG
IN THE PARKING LOT OF THE COMPLEX.  AT THAT POINT, THEY
2  HAD NO IDEA WHERE THE SUSPECTS WERE.  THE OFFICERS
PURSUIT HAD TURNED INTO A "SEARCH."  THREE HOURS AFTER
3  THE SEARCH BEGAN SNEDIGAR AND MARTINEZ WERE KILLED.  MY
SELF AND CO-DEFENDANT WERE NEVER NOWHERE NEAR THE DEATH
4  SCENE.  ACCORDINGLY, AT THE TIME OF THE DEATH OF THE TWO
INDIVIDUALS I WAS NOT ACTING IN COURSE AND FURTHERANCE
5  OF THE COMPLETED ROBBERY, NOR WAS I IN IMMEDIATE FLIGHT
FROM IT.  THEREFORE I SHOULD NOT HAVE BEEN CHARGED WITH
6  EITHER COUNT OF MURDER.

7  **GROUND II**: Amendment VI

8  ON THIS ISSUE I AM CLAIMING THT MY LAWYER MISLED ME INTO
WAIVING MY RIGHTS TO A JURY TRIAL IN THIS CAPITAL
9  PUNISHMENT CASE.  MY LAWYER ADVISED ME THAT IT WOULD BE
BEST IF I WAIVE MY RIGHTS TO A JURY TRIAL AND HAVE A
10  BENCH TRIAL.  IN EXCHANGE, THE STATE WOULD DROP ITS
INTENT TO SEEK THE DEATH PENALTY, AND ONLY IF I'M FOUND
11  GUILTY OF FIRST DEGREE MURDER OF OFFICER SNEDIGAR, THE
STATE WAS WILLING TO DROP OTHER CHARGES I HAD PENDING.
12  NOW IN HINDSIGHT, I FEEL IT WAS A BAD DECISION TO LISTEN
TO MY LAWYERS ADVICE BEING THAT MY CHANCES WITH A "JURY"
13  WOULD HAVE MADE A DIFFERENCE.  MY KNOWLEDGE TO THE LAW
IS VERY LIMITED AND I CANNOT AFFORD A LAWYER.  SO PLEASE
14  EXCUSE ANY ERRORS I MAY HAVE MADE THROUGHOUT THIS HABEUS
[sic] CORPUS.

15  (Doc. 1 at pp. 5-6).

16
### DISCUSSION

17
**A. Anti-Terrorism and Effective Death Penalty Act of 1996**

18
Pursuant to 28 U.S.C. § 2254(d), the following standard for

19
granting a federal habeas petition originating from a state court

20
conviction applies:

21
An application for a writ of habeas corpus on behalf of
22  a person in custody pursuant to the judgment of a State
court shall not be granted with respect to any claim
23  that was adjudicated on the merits in State court
proceedings unless the adjudication of the claim--

24
(1) resulted in a decision that was contrary to, or
25  involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
26  Court of the United States; or

27
(2) resulted in a decision that was based on an

28
4

1    unreasonable interpretation of the facts in light of the
     evidence presented in the State court proceedings.

2
          The Act also codifies a presumption of correctness of state
3
court findings of fact.  28 U.S.C. § 2254(e)(1) states that "a
4
determination of a factual issue made by a State court shall be
5
presumed to be correct" and the petitioner has the burden of proof
6
to rebut the presumption by "clear and convincing evidence."  As
7
discussed more fully below, these provisions of the Act set the
8
standard for the Court's evaluation of the merits.
9
          The Act limits the district court's discretion to hold
10
evidentiary hearings.  28 U.S.C. § 2254(e)(2) states:
11
          If the applicant has failed to develop the factual basis
12        of a claim in State court proceedings, the court shall
          not hold an evidentiary hearing on the claim unless the
13        applicant shows that--

14        (A) the claim relies on--

15        (i) a new rule of constitutional law, made retroactive
          to cases on collateral review by the Supreme Court that
16        was previously unavailable; or

17        (ii) a factual predicate that could not have been
          previously discovered through the exercise of due
18        diligence; and

19        (B) the facts underlying the claim would be sufficient
          to establish by clear and convincing evidence that but
20        for constitutional error, no reasonable factfinder would
          have found the applicant guilty of the underlying
21        offense.

22        A petition may be denied on the merits even though it

23   contains unexhausted claims, and the state does not waive

24   exhaustion except by an express waiver on the record.   28 U.S.C.

25   §2254(b)(2) and (3).

26

27

28
                              5

1 | **B. Exhaustion and Procedural Default**

2 |     1. Law Generally

3 |     A federal court has authority to review a federal

4 | constitutional claim presented by a state prisoner if available

5 | state remedies have been exhausted.  Duckworth v. Serrano, 454

6 | U.S. 1, 3 (1981)(per curiam); McQueary v. Blodgett, 924 F.2d 829,

7 | 833 (9th Cir. 1991).  The exhaustion doctrine, first developed in

8 | case law and codified at 28 U.S.C. § 2254, now states:

9 |     (b)(1) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment

10 | of a State court shall not be granted unless it appears
that--

11 | 

12 |     (A) the applicant has exhausted the remedies available
in the courts of the State; or

13 |     (B)(i) there is an absence of available state
corrective process; or

14 | 

15 |     (ii) circumstances exist that render such process
ineffective to protect the rights of the applicant.

16 | .......

17 |     (c) An applicant shall not be deemed to have exhausted
the remedies available in the courts of the State,

18 | within the meaning of this section, if he has the right
under the law of the State to raise, by any available

19 | procedure, the question presented.

20 |     The exhaustion requirement can be satisfied in one of two

21 | ways.  First, a petitioner can fairly present his or her claims to

22 | the Arizona Court of Appeals by properly pursuing them through

23 | either the state's direct appeal process or through appropriate

24 | post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008,

25 | 1010 (9th Cir. 1999).  Only one of these avenues of relief must be

26 | exhausted before bringing a habeas petition in federal court.

27 | This is true even where alternative avenues of reviewing

28 | 6

1     constitutional issues are still available in state court.  Brown

2     v. Easter, 68 F.3d 1209, 1211 (9th Cir. 1995); Turner v. Compoy,

3     827 F.2d 526, 528 (9th Cir. 1987), cert. denied, 489 U.S. 1059

4     (1989).

5         Claims presented in habeas petitions are considered exhausted

6     if they have been ruled upon by the Arizona Court of Appeals.

7     However, if the sentence received is life imprisonment, the claims

8     must be presented to the Arizona Supreme Court.  Swoopes, 196 F.3d

9     at 1010.   Although a federal habeas petitioner may reformulate

10    somewhat the claims made in state court, Tamapua v. Shimoda, 796

11    F.2d 261, 262 (9th Cir. 1986), rev'd in part on other grounds by

12    Duncan v. Henry, 513 U.S. 364 1995), the substance of the federal

13    claim must have been "fairly presented" in state court.  Anderson

14    v. Harless, 459 U.S. 4, 6 (1982)(per curiam); Picard v. Connor,

15    404 U.S. 270, 278 (1971).  While the petitioner need not recite

16    "book and verse on the federal constitution," Picard, 404 U.S. at

17    277-78 (quoting Daugherty v. Gladden, 257 F.2d 750, 758 (9th Cir.

18    1958)), it is not enough that all the facts necessary to support

19    the federal claim were before the state courts or that a "somewhat

20    similar state law claim was made."  Anderson, 459 U.S. at 6.

21        As an alternative to presenting his claims to the highest

22    state court, a petitioner can satisfy the exhaustion requirement

23    by demonstrating that no state remedies remained available at the

24    time the federal habeas petition was filed.  Engle v. Isaac, 456

25    U.S. 107, 125 (n. 28)(1982); White v. Lewis, 874 F.2d 599, 602

26    (9th Cir. 1989).  However, this path is fraught with danger:

27

28                                    7

1

2

3
>              If state remedies are not available because the
>              petitioner failed to comply with state procedures and
>              thereby prevented the highest state court from reaching
>              the merits of his claim, then a federal court may refuse
>              to reach the merits of that claim as a matter of comity.

4   Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988); see also

5   Swoopes, 196 F.3d at 1010 (determining that the exhaustion

6   requirement is satisfied if a petitioner presented a claim to the

7   Arizona Court of Appeals either on direct review or via a petition

8   for post-conviction relief).  This failure to comply with

9   reasonable state procedures is usually characterized as

10  "procedural default," "procedural bar," or a "waiver."  As

11  discussed, exhausting state remedies by means of a procedural

12  default is risky.  The burden is on the petitioner to show that he

13  or she has properly exhausted each claim.  Dismissal of the

14  petition is proper when the record does not show that the

15  exhaustion requirement is met.  Cartwright v. Cupp, 650 F.2d 1103,

16  1104 (9th Cir. 1981)(per curiam), cert. denied, 455 U.S. 1023

17  (1982).  If the unavailability of state remedies is in no way the

18  fault of the petitioner or his or her counsel, the exhaustion

19  requirement will likely be satisfied and a federal court may reach

20  the merits of the petitioner's habeas claims.

21       In many cases, however, the lack of available state remedies

22  is a direct result of the petitioner's failure to avail himself of

23  the state remedies in a timely or procedurally correct manner.  In

24  such instances, the petitioner has procedurally defaulted, and may

25  not obtain federal habeas review of that claim absent a showing of

26

27

28

8

1 "cause and prejudice" sufficient to excuse the default.[1]  Reed v.

2 Ross, 468 U.S. 1, 11 (1984); Wainwright v. Sykes, 433 U.S. 72, 90-

3 91 (1977); see also Teaque v. Lane, 489 U.S. 288, 298 (1989);

4 Tacho v. Martinez, 862 F.2d 1376, 1380 (9th Cir. 1988).  "Cause"

5 is the legitimate excuse for the default.  Thomas v. Lewis, 945

6 F.2d 1119, 1123 (9th Cir. 1991).  "Prejudice" is actual harm

7 resulting from the alleged constitutional violation.  Id.

8 "Because of the wide variety of contexts in which a

9 procedural default can occur, the Supreme Court 'has not given the

10 term "cause" precise content.'" Harmon v. Barton, 894 F.2d 1268,

11 1274 (11th Cir.)(quoting Reed, 468 U.S. at 13), cert. denied, 498

12 U.S. 832 (1990).  The Supreme Court has suggested, however, that

13 cause should ordinarily turn on some objective factor external to

14 petitioner, for instance:

15 ... a showing that the factual or legal basis for a
   claim was not reasonably available to counsel, (citation
16 omitted), or that "some interference by officials,"
   (citation omitted), made compliance impracticable, would
17 constitute cause under this standard.

18 Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Harmon, 894

19 F.2d at 1275; Allen v. Risley, 817 F.2d 68, 69 (9th Cir. 1987).

20 The standard is one of discretion intended to be flexible and

21 yielding to exceptional circumstances.  Hughes v. Idaho State

22 Board of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).  The

23 "cause and prejudice" standard is equally applicable to pro se

24 litigants, Harmon, 894 F.2d at 1274; Hughes, 800 F.2d at 908,

25 

26 [1]Appellate defaults are examined under the same standards that
   apply when a defendant fails to preserve a claim during trial.
27 Smith v. Murray, 477 U.S. 527, 533 (1986).

28 9

1    whether literate and assisted by "jailhouse lawyers," Tacho, 862

2    F.2d at 1381; illiterate and unaided, Hughes, 800 F.2d at 909, or

3    non-English speaking.  Vasquez v. Lockhart, 867 F.2d 1056, 1058

4    (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

5         Finally, if a claim has been found to be procedurally

6    defaulted, the failure to establish cause for the default may be

7    excused under exceptional circumstances.  For instance:

8         ... in an extraordinary case, where a constitutional
          violation has probably resulted in the conviction of one
9         who is actually innocent, a federal habeas court may
          grant the writ even in the absence of showing cause for
10        the procedural default.

11   Murray, 477 U.S. at 496; see also Schlup v. Delo, 513 U.S. 298,

12   327 (1995)(to meet the Murray standard, "the petitioner must show

13   that it is more likely than not that no reasonable juror would

14   have convicted him in the light of the new evidence").

15        2. Application of Law to Facts of the Case

16        Respondents first assert that the claim presented in Ground I

17   is procedurally defaulted because plaintiff never raised it on

18   direct appeal.  Review of plaintiff's brief to the Arizona Court

19   of Appeals on direct appeal, shows that although plaintiff raised

20   a similar claim in state court he did not raise it as a violation

21   of his federal constitutional rights, rather, plaintiff raised

22   this claim solely as a violation of state law.  (See Doc. 4,

23   Exhibit F at pp. 9-11).  Similarly, on appeal to the Arizona

24   Supreme Court, petitioner likewise confined his arguments on this

25   issue to violations of state law.  (See id., Exhibit H at pp. 3-

26   6).  As a result, the federal nature of the claim presented in

27   Ground I of the habeas petition was never exhausted in state

28                                10

1    court.  Because the time to present this claim in state court has

2    long passed, petitioner is without further state remedies with

3    respect to this issue and Ground I is technically exhausted.

4    Technical exhaustion is not proper exhaustion, unless petitioner

5    can present cause and prejudice for failing to exhaust his federal

6    claim in state court, the claim is procedurally barred from

7    federal habeas review.  See Reed, 468 U.S. at 11.  Petitioner has

8    made no such showing and Ground I is procedurally defaulted.

9        The Court may ignore the procedural default and consider the

10   substance of this claim if petitioner can demonstrate exceptional

11   circumstances that will result in his conviction, though innocent,

12   if his claim is not considered.  See Murray, 477 U.S. at 496,

13   Schlup 513 U.S. at 327.  Upon review of the record, the Magistrate

14   Judge concludes petitioner has made no such showing.

15       Similarly, even assuming the substance of Ground II was

16   properly presented in petitioner's Rule 32 petition to the trial

17   court, (see Doc. 4 at Exhibit L), this claim is also procedurally

18   defaulted.  By petitioner's own acknowledgment, he never presented

19   this claim to the state appellate courts after the trial court

20   denied relief.  (Doc. 1 at p. 6).  As a result, this claim was not

21   properly exhausted in state court.  See Baldwin v. Reese, 541 U.S.

22   27, 29 (2004) (holding that to properly exhaust a federal habeas

23   claim in state court, the petitioner "must 'fairly present' his

24   claim in each appropriate state court, thereby alerting that court

25   to the federal nature of the claim."). Because the opportunity to

26   present this claim to an appellate court has long passed,

27   petitioner has no further opportunity to exhaust this claim in

28                                    11

1    state court and the claim is also technically exhausted.

2    Petitioner has presented no cause for failing to properly exhaust

3    this claim in state court.  He simply acknowledges he did not do

4    so but offers no explanation.  (Doc. 1 at p. 6).  As a result,

5    this claim is likewise procedurally defaulted.

6         As noted with respect to Ground I, petitioner has presented

7    no evidence of extraordinary circumstances justifying the Court to

8    disregard the procedural default and consider the substance of the

9    issue raised in Ground II.

10        IT IS THEREFORE RECOMMENDED that the Petition for Writ of

11   Habeas Corpus be denied.

12        This Report and Recommendation is not an order that is

13   immediately appealable to the Ninth Circuit Court of Appeals.  Any

14   notice of appeal filed pursuant to Rule 4(a)(1), Federal Rules of

15   Appellate Procedure, should not be filed until entry of the

16   district court's order and judgment.  The parties shall have ten

17   (10) days from the date of service of this Report and

18   Recommendation within which to file specific written objections

19   with the Court.  Thereafter, the parties have ten (10) days within

20   which to file a response to the objections. Failure timely to file

21   objections to any factual determinations of the Magistrate Judge

22   will be considered a waiver of a party's right to de novo

23   consideration of the factual issues and will constitute a waiver

24   of a party's right to appellate review of the findings of fact in

25   an order or judgment entered pursuant to the Magistrate Judge's

26

27

28                                   12

1 | Report and Recommendation.

2 |     DATED this 7th day of December, 2005.

3

4 | _____
    Virginia A. Mathis
    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28